[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13506
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-00345-ODE-JSA

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ARTURO SANCHEZ-RUIZ,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 24, 2015)

Before HULL, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Arturo Sanchez-Ruiz appeals his 110-month sentence for being an illegal alien in possession of a firearm, in violation of 18 U.S.C. § 922(g)(5); being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and illegal reentry after having previously been removed, in violation of 8 U.S.C. §§ 1326(a), (b)(2). Mr. Sanchez-Ruiz raises two arguments on appeal. First, he contends that the district court erred in applying U.S.S.G. § 2K.2.1(b)(6)(B) and imposing a four-level enhancement for possession a firearm "in connection with another felony offense." Second, he asserts that his 110-month sentence is substantively unreasonable. After a review of the record and the parties' briefs, we affirm the sentence imposed by the district court.

# I

In July of 2013, local police officers in Alpharetta, Georgia, stopped a Cadillac Escalade for a traffic violation. Mr. Sanchez-Ruiz—the passenger in that vehicle—gave the officers a Mexican identification card in the name of Rene Salas-Moreno. Immigration Customs and Enforcement agents arrived at the traffic stop to locate and inspect the immigration records of Mr. Sanchez-Ruiz and the driver. When the agents asked Mr. Sanchez-Ruiz if they could speak more privately at another location, he suggested his apartment, which was nearby.

Before entering the apartment, the agents asked Mr. Sanchez-Ruiz whether he had any firearms inside. He initially said he did not, but before the agents

entered the apartment, he volunteered that there was a firearm in his bedroom. He also gave the agents written consent to search the apartment. The agents recovered the loaded firearm under Mr. Sanchez-Ruiz's pillow and $5,000 in cash under his bed. They also found in the kitchen of the one-bedroom apartment a methamphetamine sales ledger showing sales at the price of $17,000 per kilogram, drug scales, cellophane wrapping, and plastic sandwich bags. After performing an electronic query, the agents learned that the firearm had been stolen. At the apartment, the agents fingerprinted Mr. Sanchez-Ruiz, which led them to his true identity. They then reviewed his criminal record.

Mr. Sanchez-Ruiz had four prior convictions, including two felony drug convictions. In 2004, he was convicted of possession of 10 to 70 pounds of marijuana with intent to sell or deliver. And in 2007, he was convicted of trafficking more than 400 grams of cocaine and sentenced to 18 years' imprisonment, but he was removed to Mexico in December of 2012, before completing his full sentence. A grand jury charged Mr. Sanchez-Ruiz with being an illegal alien in possession of a firearm, under 18 U.S.C. § 922(g)(5) (Count 1); being a felon in possession of a firearm, under 18 U.S.C. § 922(g)(1) (Count 2); and illegal reentry after having previously been removed, under 8 U.S.C. §§ 1326(a), (b)(2) (Count 3).

3

Mr. Sanchez-Ruiz ultimately pled guilty to all three charges. He received a base offense level of 24 for Counts 1 and 2, which were calculated together pursuant to U.S.S.G. § 3D1.2(d). He also received a four-level increase, under § 2K2.1(b)(6)(B), because he possessed the firearm "in connection with another felony offense," and this enhancement resulted in an adjusted offense level of 30. A multiple count adjustment, under § 3D1.4, gave him a combined adjusted offense level of 31. Because he accepted responsibility for his offenses, he received a three-level downward adjustment, which resulted in a total offense level of 28. Based on his prior criminal convictions, Mr. Sanchez-Ruiz was assigned a criminal history category of IV. With an offense level of 28 and a criminal history category of IV, Mr. Sanchez-Ruiz's advisory guideline range was 110 to 137 months of imprisonment.

At the sentencing hearing, Mr. Sanchez-Ruiz objected to the four-level enhancement under § 2K2.1(b)(6)(B), because he was neither indicted nor charged with another felony offense. The government argued that, given Mr. Sanchez-Ruiz's history of drug trafficking, the fact that he was the only individual residing in the one-bedroom apartment at the time the agents entered, and the fact that the drug items and paraphernalia were found in the apartment, Mr. Sanchez-Ruiz was involved in drug trafficking. As a result, the firearm was used "in connection with" felony drug trafficking activity. Mr. Sanchez-Ruiz replied that he shared the

4

apartment with two other individuals and that none of the drug paraphernalia was specifically tied to him. The government rebutted Mr. Sanchez-Ruiz's claim that he was not the only resident of the apartment by proffering that the driver of the Escalade indicated he was moving into the apartment, but had not yet moved in, and that the lease was likely signed by someone else because Mr. Sanchez-Ruiz was an illegal alien. Mr. Sanchez-Ruiz accepted the government's proffer. The district court then overruled Mr. Sanchez-Ruiz's objection to the § 2K2.1(b)(6)(B) enhancement.

The district court sentenced Mr. Sanchez-Ruiz to 110-months imprisonment, the low end of the advisory sentencing guideline range. It explained it thought the sentence was fair and particularly aimed to deter further conduct by Mr. Sanchez-Ruiz, as "we've been through this loop before, the return to the United States and then more drug trafficking." Therefore, in order for Mr. Sanchez-Ruiz "to recognize the seriousness of the conduct and deter [him] from doing the same things again, it has to be a reasonably stiff sentence." Mr. Sanchez-Ruiz raised no additional objections to the sentence after it was imposed.

On appeal, Mr. Sanchez-Ruiz argues that the district court erred in applying § 2K2.1(b)(6)(B), because he was never arrested, charged, nor indicted of any drug felony offense in relation to the possession of the firearm. He relies primarily on appeal on testimony from the lead investigating officer, Steven Ledgerwood, at a

pretrial suppression hearing. Mr. Sanchez-Ruiz also argues that his 110-month sentence is substantively unreasonable given his personal characteristics and circumstances.

## II

We review the interpretation of the sentencing guidelines *de novo* and the district court's factual findings under the clearly erroneous standard. *See United States v. Jordi*, 418 F.3d 1212, 1214 (11th Cir. 2005). A finding of fact "is clearly erroneous when, after reviewing all the evidence, the court is left with the definite and firm conviction that a mistake has been committed." *United States v. Philidor*, 717 F.3d 883, 885 (11th Cir. 2013) (internal citations and quotations omitted). We review the substantive reasonableness of a criminal sentence under the abuse of discretion standard. *United States v. Livesay*, 587 F.3d 1274, 1278 (11th Cir. 2009).

## A

Mr. Sanchez-Ruiz contends that the district court erred when it applied a four level offense enhancement under § 2K2.1(b)(6)(B) of the advisory sentencing guidelines. To apply § 2K2.1(b)(6)(B), the district court must find by a preponderance of the evidence that the defendant possessed the firearm "in connection with another felony offense" or "with knowledge, intent, or reason to

believe that it would be used or possessed in connection with another felony offense."

The district court found that Mr. Sanchez-Ruiz indeed possessed the firearm in connection with a drug trafficking felony, relying on the $5,000 in cash found in Mr. Sanchez-Ruiz's apartment, the drug ledger citing the price of $17,000 per kilogram, and other drug paraphernalia found in the apartment. Mr. Sanchez-Ruiz argues this evidence was insufficient for the district court to find by a preponderance that the firearm was used in connection with another drug felony offense. *See United States v. Rodriguez*, 732 F.3d 1299, 1305 (11th Cir. 2013) (stating that where a defendant challenges one of the factual bases of his sentence, the government must prove the disputed fact by a preponderance of the evidence with reliable and specific evidence). We disagree.

On appeal, Mr. Sanchez-Ruiz relies heavily on the testimony of Agent Ledgerwood, who testified at a pretrial suppression hearing before a magistrate judge that he did not believe he had sufficient probable cause to arrest Mr. Sanchez-Ruiz for drug offenses based on the drug items and drug paraphernalia found in his apartment. Specifically, Agent Ledgerwood stated that the presence of those items was "more evidence that he might be involved in that stuff, but not really an arrestable offense." Mr. Sanchez-Ruiz argues that because Agent Ledgerwood did not have probable cause to arrest him for a felony drug offense,

7

the district court erred when it concluded by a preponderance of the evidence, a higher standard than probable cause, that Mr. Sanchez-Ruiz possessed the firearm "in connection with" a felony drug offense. Mr. Sanchez-Ruiz, however, did not make this argument to the district court or refer to Agent Ledgerwood's testimony at sentencing.

Litigants are required "to make all their objections to a sentencing court's findings of facts . . . at the initial sentencing hearing." *United States v. Canty*, 570 F.3d 1251, 1256 (11th Cir. 2009). Although Mr. Sanchez-Ruiz did raise an objection to the four-level enhancement, he never mentioned Agent Ledgerwood's testimony or the lack of probable cause to arrest him for a drug offense to the district court at sentencing. Instead, his bare-bones argument to the district court was that there was insufficient evidence to conclude the firearm was used "in connection with another felony offense" because he was not the only occupant of the apartment.

"Where the district court has offered the opportunity to object and a party . . . fails to state [ ] grounds for objection, objections to the sentence will be waived for purposes of appeal, and this court need not entertain an appeal upon such objections, unless refusal to do so would result in manifest injustice." *United States v. Jones*, 899 F.2d 1097, 1103 (11th Cir. 1990) *overruled on other grounds by United States v. Morrill*, 984 F.2d 1136, 1137 (11th Cir. 1993) (en banc). Given

8

that Mr. Sanchez-Ruiz did not present to the district court the argument he now advances on appeal, that argument does not entitle him to reversal. *See Canty*, 570 F.3d at 1257 (a defendant cannot "present additional evidence and seek additional findings of fact and conclusions of law to [avoid] the ACCA enhancement when [he] failed to offer such evidence and seek those findings and conclusions during the initial sentencing hearing").

Based upon the record before it, the district court did not clearly err in finding that Mr. Sanchez-Ruiz committed a felony drug offense in connection with the possession of the firearm. The district court, at the time of the sentencing hearing, could have reasonably concluded by a preponderance of the evidence that Mr. Sanchez-Ruiz committed a drug trafficking felony offense. The district court credited the government's proffer (which Mr. Sanchez-Ruiz accepted) and concluded that the drug items and paraphernalia belonged to Mr. Sanchez-Ruiz, the sole resident of the apartment. We are not left with a definite and firm conclusion that the district court made a mistake. *See Philidor*, 717 F.3d at 885.

The district court also did not err in applying its factual findings to its interpretation of § 2K2.1(b)(6)(B). The guidelines commentary provides that "in connection with" means when a firearm "facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1, cmt. 14(A). "Another felony offense" under § 2K2.1(b)(6)(B) "means any federal, state, or local

9

offense," punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1, cmt. 14(C). The relevant commentary also states that § 2K2.1(b)(6)(B) applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." U.S.S.G. § 2K2.1, cmt. 14(B). "In these cases, applications of subsections (b)(6)(B) . . . is warranted because the presence of the firearm has the potential of facilitating another felony offense or another offense, respectively." *Id.*

Although Mr. Sanchez-Ruiz correctly notes that he was not arrested, charged, or convicted of another felony offense, the commentary makes clear that a defendant need not be charged or convicted of an offense, in order for the district court to conclude at sentencing by a preponderance of the evidence that the firearm facilitated or had the potential of facilitating another felony offense. *See* U.S.S.G. § 2K2.1, cmt. 14(C). In this case, the drugs were found in the same one-bedroom apartment as the firearm. We have previously held that "[a] firearm found in close proximity to drugs or drug-related items 'has'—without any requirement for additional evidence—the potential to facilitate the drug offense." *United States v. Carillo-Ayala*, 713 F.3d 82, 92 (11th Cir. 2013). *See also United States v. Rhind*, 289 F.3d 690, 695 (11th Cir. 2002) (construing § 2K2.1(b)(5)—now § 2K2.1(b)(6)—broadly and finding that "the firearm does not have to facilitate the

underlying offense"). In sum, the district court did not err in its interpretation and application of § 2K2.1(b)(6)(B) in this case.

**B**

Having concluded that the district court did not err in applying § 2K2.1(b)(6)(B), we turn to the argument that the 110-month sentence was substantively unreasonable given Mr. Sanchez-Ruiz's personal background and the circumstances of his offenses. Although we acknowledge Mr. Sanchez-Ruiz's difficult upbringing and family situation, we do not find that his 110-month sentence, a sentence at the low end of the advisory guideline range and well within the statutory ranges for Mr. Sanchez-Ruiz's convictions, is substantively unreasonable. *See United States v. Asante*, 782 F.3d 639, 648 (11th Cir. 2015) (explaining that while we do not "automatically presume a sentence within the guidelines range is reasonable, . . . we ordinarily expect a sentence within the Guidelines range to be reasonable") (internal citations and quotations omitted).

The district court considered Mr. Sanchez-Ruiz's previous cycle of criminal activity and illegal reentry into the United States and emphasized that it believed a sentence of 110 months was proper for Mr. Sanchez-Ruiz, because he needed "to recognize the seriousness of the conduct and deter [him] from doing the same things again." The district court relied primarily on the sentence's need to reflect

11

the seriousness of the offense, *see* § 3553(a)(2)(A), and deter future criminal conduct, *see* § 3553(a)(2)(B). The weight the district court gives to any § 3553(a) factor "is a matter committed to the sound discretion of the district court." *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007). We do not find that the district court abused its discretion in imposing a 110-month sentence.

## III

We affirm the district court's sentence.

**AFFIRMED.**